STATE, NEW YORK AND LONG BRANCH RAILROAD COMPANY, PROSECUTORS, v. GORDON DRUMMOND ET AL.

STATE, NEW EGYPT AND FARMINGDALE RAILROAD COMPANY, PROSECUTORS, v. GORDON DRUMMOND ET AL.

1. A railroad company having built a platform on land already dedicated to public use as a highway, cannot prevent the opening of the highway on the ground that the platform is necessary for the transaction of its business.

2. Under "An act relative to railroad crossings and to prevent accidents," (*Pamph. L.* 1881, *p.* 291,) in order to determine whether a proposed new road is within five hundred feet of an old one, the width of the highways where they cross the railroad bed and tracks, and not the width elsewhere, must be regarded.

On *certiorari* in matter of road.

Argued at June Term, 1883, before Justices DIXON and PARKER.

For the prosecutors, *John S. Applegate.*

For the defendants, *W. H. Vredenburgh, C. Robbins* and *F. G. Burnham.*

The opinion of the court was delivered by

DIXON, J.   These writs bring up for review the proceedings of the Monmouth Pleas in laying out a public road, beginning in the centre line of Bangs avenue, as shown on the map of Asbury Park, and running thence westerly along that centre line across the railroad of the New York and Long Branch Railroad Company, and having a width of two rods on each side of the centre line.

The first objection urged is that the opening of the new road will destroy one of the structures of the prosecutors necessary to the enjoyment of their franchises, and the principle is invoked that one public use cannot be superseded by another, without unmistakable legislative authority.   It is conceded, and I suppose necessarily, in view of the opinion in *Morris and Essex R. R. Co.* v. *Central R. R. Co.,* 2 *Vroom* 205, that the ordinary power to lay out roads will warrant the laying out of a highway across the tracks of a railroad, but it is claimed that, in the present instance, a greater power must be shown, because a raised platform, about thirty-seven feet square, used by the company for the handling of baggage, is to be removed.

A complete answer to this objection is, I think, found in the fact that the company built that platform on land already dedicated to the uses of a public road, and to which it has no title, except as the abutter upon a highway.   By act of March 26th, 1874, (*Pamph. L.* 1874, *p.* 500,) Asbury Park was incorporated as a borough, having for its westerly boundary the west line of the New Egypt and Farmingdale Railroad, as

then graded, and in the same year James A. Bradley and others made and filed in the county clerk's office a map of Asbury Park, showing Bangs avenue laid out seventy-five feet wide, and extending westerly to the railroad. By deed of August 1st, 1876, Britton White conveyed to the New Egypt and Farmingdale Railroad Company a plot of ground for a railroad station, which was therein described as running to the southerly line of Bangs avenue, as laid down on the map of Asbury Park, and thence easterly along the southerly line of Bangs avenue, &c. The platform in question adjoins this plot upon the north, and this deed confers upon the company the only title that it shows to the land on which the platform stands. Under the rules established in *Clark* v. *City of Elizabeth*, 11 *Vroom* 172, and *Salter* v. *Jonas*, 10 *Vroom* 469, the public right to have Bangs avenue opened as a highway became, by the delivery and acceptance of this deed, paramount to all the rights in it of White and the railroad company. The road now laid out is within the lines of Bangs avenue. This objection, therefore, cannot prevail.

The second objection is, that this road is laid out within five hundred feet of Munroe avenue, which crosses the railroad of this company, and is, therefore, forbidden by " An act relative to railroad crossings and to prevent accidents," approved March 25th, 1881. *Pamph. L.* 1881, *p.* 291.

It is important, first, to determine whether the fact be so; and this depends upon whether Munroe avenue, as a public road, " *crosses the road-bed and tracks of the company*," (to quote the language of the statute), at a width of seventy-five feet or only at the width of the planking laid between the tracks for the purposes of a crossing. If the former, then the new road is only four hundred and seventy-nine feet six inches from Munroe avenue; if the latter, it is five hundred and six feet distant.

According to the evidence in this case, Munroe avenue was never laid out by formal proceedings of the public authorities. It first appears on the map of Asbury Park, already mentioned. On that map it does not cross the railroad, but stops

at its easterly edge. The railroad bed was then already in the possession of the company and graded, as is shown by the recital in the second section of the act incorporating Asbury Park, and as is also fairly inferable from the testimony in this cause. Whence the company derived the title by which it held the road-bed at this early time, is not disclosed, but in the absence of other proof this possession must be regarded as evidence of title, and of title prior to any dedication of Munroe avenue to public use. Such a dedication, then, to be effective upon the railroad bed, must spring from the acts of the company. No act of the company evincing a purpose to dedicate its road-bed to use as a highway, is shown, except the laying of planks between the tracks to facilitate crossing, and this act indicates a dedication no further than the planks extend. So far, then, as the location of the avenue *across the railroad bed and tracks* depends upon the dedication of the owner, it is more than five hundred feet from the new road.

. If we turn to look for the use of the road by the public or for the action of the public authorities of the borough, no other conclusion than that already indicated can be reached. It does not appear that any right of crossing has been exercised outside of the planking. The borough commissioners have, under their charter, charge and full control of all streets in the borough; but it has not been shown that they ever attempted to do anything, under this power, within the limits of the company's road-bed; on the contrary, the company itself made and preserved the crossing.

One other consideration tends in the same direction. The width of Munroe avenue, on the map of Asbury Park, is seventy-five feet. There is no other legislative authority for the laying out of public roads in the borough than is conferred by our general road act. The Court of Errors has declared that under that law a road more than four rods wide could neither be laid out by the surveyors nor accepted by the township as a public highway. *Holmes* v. *Jersey City*, 1 *Beas.* 299, 309. It would seem, therefore, that Munroe avenue cannot be a public highway to the full width of seventy-five feet, at least so as to throw upon the public the burdens con-

sequent on such a condition of things. But if it be not seventy-five feet wide as a public road, then there is no other criterion of its width at the crossing than the planking.

My conclusion is that this second objection is untenable.

The third objection, urged by the New York and Long Branch Railroad Company only, is that no award was made to it for land taken. The return shows that an award was made to the New Egypt and Farmingdale Railroad Company, and the proof shows that on the consolidation of this company with others into the New York and Long Branch Railroad Company, the lands of the former passed to the latter. The award should, therefore, be transferred from one company to the other. In order that the transfer may be made, let the proceedings be remitted to the Monmouth Pleas.

In other respects the proceedings are affirmed.

No costs will be allowed to either party.